Michelle S. Grant (To Be Admitted *Pro Hac Vice*)
*Grant.michelle@dorsey.com*
**DORSEY & WHITNEY LLP**
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498
Tel: (612) 340-2600; Fax: (612) 340-2868

Bryan M. McGarry (SBN 258156)
*mcgarry.bryan@dorsey.com*
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Tel: (714) 800-1400; Fax: (714) 800-1499

Attorneys for Defendant OPTUMRX, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

GAIL DAVIS, for herself and all others similarly situated,

Plaintiffs,

v.

OPTUMRX, INC.; CIGNA HEALTH AND LIFE INSURANCE COMPANY; and DOES 1-10, inclusive,

Defendants.

CASE NO: **8:16-CV-02165-DOC-JCG**

District Judge
David O. Carter
Ctrm 9D/9th FL.

Magistrate Judge
Jay C. Gandhi
Ctrm 6A

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPTUMRX'S MOTION TO TRANSFER TO DISTRICT OF CONNECTICUT**

[*Filed Concurrently with Notice of Motion and Motion; Declaration of Michelle S. Grant; Declaration of Richard A. Cross; and [Proposed] Order*]

**HEARING**
**Date:** **February 6, 2017**
**Time:** **8:30 am**
**Location:** **Courtroom 9D**

Action Filed: December 7, 2016
Trial Date: None Set

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 1

A. The Connecticut Actions ........ 1

B. The Present Action and Comparison to Connecticut Actions ........ 3

ARGUMENT ........ 7

I. THIS COURT SHOULD TRANSFER THIS ACTION UNDER THE FIRST-TO-FILE RULE ........ 7

A. The First-Filed Case Was Filed in the District of Connecticut ........ 8

B. The Parties Are Substantially Similar ........ 8

C. Plaintiff's Claims Are Substantially Similar ........ 9

II. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION UNDER 28 U.S.C. § 1404(a) ........ 10

A. The Interest of Justice Weighs Strongly in Favor of Transfer ........ 11

B. Convenience of the Parties and Witnesses Support Transfer ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Bed Bath & Beyond*,
No. C 11-02220, 2011 U.S. Dist. LEXIS 79973 (N.D. Cal. July 22, 2011) ....................1

*Cadenasso v. Metro. Life Ins. Co.*,
No. 13-cv-05491-JST, 2014 U.S. Dist. LEXIS 52750 (N.D. Cal. April 5, 2014) ....................8

*Church of Scientology v. United States Dep't of Army*,
611 F.2d 738 (9th Cir. Cal. 1979)....................8

*Continental Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960)....................11

*Elects. for Imaging, Inc. v. Tesseron Ltd.*,
No. C 07-05534-CRB, 2008 WL 276567 (N.D. Cal. Jan. 29, 2008) .................... 10, 11

*Enom v. Philbrick*,
No. C08-1288RSL, 2008 WL 4933976 (W.D. Wash. Nov. 17, 2008) ....................12

*Galitski v. Samsung Telcoms. Am., LLC*,
No. 8:CV-12-00903-CJC(JPRx), 2012 U.S. Dist. LEXIS 191733 (C.D. Cal. Nov. 21, 2012)....................10

*In re Genesisintermedia, Inc. Secs. Litig.*,
No. cv 01-02024-SVW-(Mcx), 2003 US Dist. LEXIS 27565 (C.D. Cal. June 13, 2003).................... 7, 11

*Heartland Payment Sys. Inc. v. Verifone Israel Ltd.*,
No. C 10-0654-MHP, 2010 WL 1662478 (N.D. Cal. April 22, 2010) ....................4

*Hilton v. Apple, Inc.*,
No. C-13-2167-EMC, 2013 U.S. Dist. LEXIS 142354 (N.D. Cal. Oct. 1, 2013) .................... 7, 9, 10

*Jovel v. I-Health*,
No. CV 12-005526-DDP, 2012 U.S. Dist. LEXIS 161281 (C.D. Cal. Nov. 8, 2012) ....................14

*Koehler v. Pepperidge Farm, Inc.*,
No. 13-cv-02644-YGR, 2013 U.S. Dist. LEXIS 128440 (N.D. Cal. Sept. 9, 2013) .................... 7, 8, 9

*LFG Nat'l Capital, LLC v. Gary, Williams, Finney, Lewis, Davis & Sperando, P.L.*,
No. CV 11-9988 PSG (PJWx), 2012 U.S. Dist. LEXIS 188115 (C.D. Cal. Mar. 9, 2012) .................... 11

*Rivarde v. Missouri*,
930 F.2d 641 (8th Cir. 1991) .................... 3

*Schwartz v. Frito-Lay N. Am.*,
No. C-12-02740-EDL, 2012 U.S. Dist. LEXIS 188186 (N.D. Cal. Sept. 12, 2012) .................... 6, 8, 9, 10, 11

*Siddiqi v. Gerber Prods.*,
No. CV 12-1188-PA (RZx), 2012 U.S. Dist. LEXIS 190628 (C.D. Cal. March 26, 2012) .................... 7, 12

**Statutes**

28 U.S.C. § 1404 .................... 1, 7, 10, 11, 12, 13, 14

## INTRODUCTION

This is a textbook copycat lawsuit jumping on a class-action bandwagon. Plaintiff's complaint copies the allegations and theories of two nationwide class actions that were filed in the District of Connecticut before – the first of those filed nearly eight weeks before – Plaintiff filed her complaint in this Court. The three actions allege substantially similar facts and claims and the two actions in Connecticut are currently consolidated.

Absent transfer to the District of Connecticut, Plaintiff's later-filed suit will require unnecessary and overlapping hearings, arguments, and briefs, potentially leading to inconsistent rulings on the same issues at virtually every stage of the litigation, including motions to dismiss, class certification, summary judgment, trial, and any appeals. It will also require duplicative discovery (including overlapping document requests and depositions), and will inconvenience the witnesses, the parties, and the courts. Accordingly, this action should be transferred to the District of Connecticut where all of the pending related class actions can be consolidated into a single proceeding in that court. Transfer is appropriate both under the first-to-file rule and under 28 U.S.C. § 1404(a).[1]

## BACKGROUND

Plaintiff Gail Davis ("Davis"), a resident of Arkansas, filed this putative nationwide class action on December 7, 2016. But, two class action complaints based on the same alleged improper conduct and requesting the same relief as Davis had already been filed in the District of Connecticut. (Declaration of Michelle Grant ("Grant Decl.") Exs. 1-2.)

### A. The Connecticut Actions

The first class action was filed in the District of Connecticut on October 13, 2016,

[1] In seeking such relief, OptumRx does not waive and expressly preserves all available defenses, including, without limitation, defenses available under Rule 12 of the Federal Rules of Civil Procedure, which shall be the subject of a subsequent motion.

by plaintiff Kimberly A. Negron against Cigna Corporation and Cigna Health and Life Insurance Company (collectively, "Cigna"). (Case No. 3:16-cv-01702, Doc. No. 1, Compl. (D. Conn. Oct. 13, 2016) ("Negron Compl."), Grant Decl., Ex. 1.) According to the complaint, Negron received prescription drug benefits through a health insurance plan purchased through her employer and administered by Cigna. (Negron Compl. ¶ 2.) OptumRx, Inc. ("OptumRx") is a pharmacy benefits manager used by Cigna. (*Id.* ¶ 17; Declaration of Richard A. Cross ("Cross Decl.") ¶ 4.)[2] According to Negron's complaint, OptumRx provides pharmacy care services to a substantial majority of Cigna members. (Negron Compl. ¶17.)

The *Negron* action alleges that Cigna and/or its agents overcharged the putative class (members of various health plans administered by Cigna) for prescription drugs. They purportedly do so by requiring pharmacies to collect prescription drug co-payments from members that are higher than the prescription drug reimbursement rates set by Cigna or the pharmacy benefit manager, and then "clawing back" the difference for themselves. (*See e.g.* Negron Compl. ¶¶ 3-5, 37-39.) The *Negron* action asserts seven causes of action against Cigna: a RICO count on behalf of a putative nationwide class and six separate ERISA causes of action on behalf of the putative ERISA subclass. (*Id.* ¶¶ 78-79, 94-154.)

The second putative class action was filed in the District of Connecticut on November 17, 2016, by Daniel Perry against Cigna Corporation, Cigna Health and Life Insurance Company, and OptumRx, Inc. (Case No. 3:16-cv-01904, Doc. No. 1, Compl. (D. Conn. Nov. 17, 2016) ("Perry Compl."), Grant Decl. Ex. 2.) Like the *Negron* action, the *Perry* action alleges that defendants overcharged the putative clause through

---

[2] In June 2013, Catamaran PBM of Illinois, Inc. ("Catamaran") entered into a Pharmacy Benefit Management Agreement with Connecticut General Life Insurance Company, an affiliated company of Cigna. (Cross Decl. ¶ 7.) Catamaran was a Delaware corporation with its principal place of business in Schaumberg, Illinois. (*Id.)* In July 2015, OptumRx acquired Catamaran and now serves as a pharmacy benefit manager for Cigna. (*Id.* ¶ 8.)

purportedly improper "clawback" arrangements. (*Id.* at ¶ 3-5.) The *Perry* action asserts five causes of actions against Cigna and OptumRx, including a RICO count, on behalf of a putative nationwide class. (*Id.* ¶¶ 54, 66-86.) The *Perry* action also asserts an ERISA cause of action against Cigna. (*Id.* ¶¶ 106-10.)

The District of Connecticut consolidated the *Negron* and *Perry* actions for pretrial purposes on December 2, 2016. (Case No. 3:16-01702-WWE, Doc. 13, Text Order Granting Mot. Consolidate Cases (D. Conn. Dec. 2, 2016).) The Order requires all related cases subsequently filed in or transferred to the District of Connecticut to be consolidated with these cases. (Case No. 3:16-cv-01702-WWE, Doc. 19, Order Granting Pls.'s Mot. Consolidate and Appt. Interim Class Counsel (D. Conn. Dec. 8, 2016), attached to Grant Decl. at Ex.3.) Negron and Perry will file a master Consolidated Complaint by January 3, 2017. (*Id.* at 2.)

**B. The Present Action and Comparison to Connecticut Actions**

Davis filed the present class action complaint on December 7, 2016, almost two months after the first complaint was filed in the District of Connecticut, and nearly three weeks after the second complaint was filed. (Compl., Doc. No. 1.)[3] According to the

[3] Plaintiff's counsel also filed a similar copycat lawsuit in this District against OptumRx and Cigna that makes the same allegations as three class action complaints previously filed in the District of Minnesota. *See Watson v. OptumRx, Inc. United Healthcare Insurance Company, and DOES 1-10 inclusive*, Case No. 8:16-cv-2106, Doc. 1 (C.D. Cal. Nov. 23, 2016); *Anna Mohr, Samantha Sohmer, and Charles Wilstie v. UnitedHealth Group Incorporated; United Healthcare, Inc.; United Healthcare Services, Inc.; United Healthcare Insurance Company; Oxford Health Insurance, Inc.; and UnitedHealthcare Community Plan*, Case No. 16-cv-03352 (JNE-BRT), Doc. No. 4, Compl. (D. Minn. Oct. 4, 2016); *Sherry Stevens v. UnitedHealth Group, Inc.; United Healthcare Services, Inc.; UnitedHealthcare of Alabama, Inc.; and OptumRx, Inc.*, Case No. 16-cv-03496, Doc. No. 1, Compl. (D. Minn. Oct. 14, 2016); and *Kathy Fellgren v. UnitedHealth Group Incorporated, United HealthCare Services, Inc.; UnitedHealthcare, Inc.; Optum, Inc.; and OptumRx, Inc.*, Case No. 16-cv-03914, Doc. No. 1, Compl. (D. Minn. Nov. 15, 2016). A fourth case was filed in the District of Minnesota the same day as *Watson*, and since then, four additional putative class actions have been filed there as well. *See Marvin Rabbiner v. UnitedHealth Group Incorporated, United Healthcare Services, Inc., UnitedHealthcare, Inc., Optum Inc., and OptumRx Inc.*, Case No. 16-cv-

Complaint, Davis was covered by a health plan provided by her husband's employer and currently administered by Cigna and OptumRx. (Compl. ¶ 4.)

Like the plaintiffs in the District of Connecticut actions, Davis alleges that Defendants have overcharged the putative class through a "clawback" arrangement pursuant to which Defendants allegedly require pharmacies to charge members more for the prescription than the pharmacy is reimbursed, and then "clawback" the difference for themselves. (*See e.g.*, *id.* at ¶¶ 2-3, 15-21.) Davis brings four counts against Defendants on behalf of an ERISA subclass and one count under RICO on behalf of a nationwide class. (*Id.* at ¶¶ 59-60, 74-104.)

As demonstrated in the table below, the putative nationwide classes in this action as well as the two actions pending in the District of Connecticut, although described in slightly different terms, contain the same core attributes: (1) all persons who purchased prescription drugs pursuant to health insurance plans or policies issued or administered by Cigna and OptumRx; (2) at prices greater than the drug's cost or the amount provided by the defendants' plans or policies:

---

03996, Doc. No. 1, Compl. (D. Minn. Nov. 23, 2016); *Mastra v. UnitedHealth Group Inc., UnitedHealthcare, Inc., and United Healthcare Services, Inc.*, Case No. 0:16-cv-04119, Doc. 1 (D. Minn. Dec. 8, 2016) ("Mastra Compl."); *Chambers v. UnitedHealth Group Incorporated, United HealthCare Services, Inc., UnitedHealthcare Inc., Optum, Inc., and OptumRx, Inc.*, Case No. 0:16-cv-04129, Doc. 1 (D. Minn. Dec. 9, 2016) ("Chambers Compl."); *Alston v. UnitedHealth Group Inc., United HealthCare Services, Inc., and OptumRx, Inc.*, Case No. 0:16-cv-04130, Doc. 1 (D. Minn. Dec. 9, 2016) ("Alston Compl."); *Ackerman v. UnitedHealth Group Inc., UnitedHealthcare, Inc., and United HealthCare Services, Inc.*, Case No. 0:16-cv-04136, Doc. 1 (D. Minn. Dec. 12, 2016) ("Ackerman Compl.").

| | |
|---|---|
| *Davis* | "All citizens of the United States who are subscribers, members, participants, or beneficiaries of a health insurance policy or benefit plan issued or administered by Defendants, purchased prescription drugs during the Class Period, and paid amounts in excess of the amounts that Defendants reimbursed the pharmacy that dispensed such prescription drugs for fill fees and ingredient costs." (Compl. ¶ 60) |
| *Negron* | "All insureds under Defendants' health insurance policies who purchased prescription drugs pursuant to such policies and paid an amount for such drugs that was set by Defendants (or their agents) that was higher than the amount provided by the health insurance policies." (Negron Compl. ¶ 78) |
| *Perry* | "All individuals residing in the US and its territories who purchased medically necessary, covered prescription drugs on Defendants' formulary at any time during the relevant statute of limitations period and paid a copayment in excess of the prescriptions drug's cost." (Perry Compl. ¶ 54) |

Likewise, Davis's putative ERISA subclass also overlaps with *Negron's* proposed ERISA subclass, in that the both include: (1) participants or beneficiaries of a welfare benefit plan or health insurance policy governed by ERISA; (2) who purchased prescription drugs pursuant to the health insurance policy issued or administered by Cigna and OptumRx; and (3) at prices greater than the drug's cost or the amount provided by the defendants' plans or policies:

| | |
|---|---|
| *Davis* | "All persons who are members of the Class [defined above] by virtue of their status as participants or beneficiaries of a welfare benefit plan governed by ERISA." (Compl. ¶ 61) |
| *Negron* | "All participants or beneficiaries of a welfare benefit plan health insurance policy provided by Defendants and subject to ERISA who purchased prescription drugs pursuant to such plan and paid an amount for such drugs that was higher than the amount provided by the health insurance policies." (Negron Compl. ¶ 79)[4] |

The claims alleged in Davis's complaint, also overlap with those raised in the two District of Connecticut actions. Davis brings four ERISA claims on behalf of the ERISA subclass, all of which were previously raised in the *Negron* action:

- Davis alleges in Count I that Defendants breached their fiduciary duty of loyalty. (Compl. ¶¶ 74-79.) Negron raises the same claim in Count IV. (Negron Compl. ¶¶ 116-123.)

- Davis alleges in Count II that Defendants violated ERISA § 406(a) by engaging in a transaction that provided unreasonable compensation for services that were not necessary for the operation of the plan. (Compl. ¶¶ 80-89.) Negron raises the same claim in Count II. (Negron Compl. ¶¶ 99-107.)

- In Count III, Davis alleges Defendants dealt with plan assets for their own accounts and received consideration for their own accounts in violation of ERISA § 406(b). (Compl. ¶¶ 90-95.) Negron raises this claim in Count III of her complaint. (Negron Compl. ¶¶ 108-15.)

- In Count IV, Davis alleges Defendants breached their fiduciary duties as described in ERISA § 405(a)(1-3). (Compl. ¶¶ 96-104.) Negron raises this claim in Count VI of her complaint. (Negron Compl. ¶¶ 130-38.)

The *Negron* and *Perry* actions each also assert RICO claims identical to Davis's.

[4] While the *Perry* action also brings one count under ERISA, it does not propose or define an ERISA subclass. (Perry Compl. ¶¶ 54, 106-110.)

(*Compare* Davis Compl. ¶¶ 105-17 *with* Negron Compl. ¶¶ 139-54 *and* Perry Compl. ¶¶ 66-86).

Before filing this motion, OptumRx's counsel conferred with Davis's counsel regarding Davis' willingness to stipulate to transfer to the District of Connecticut. Davis' counsel refused to so stipulate, confirmed Davis' opposition to transfer, and confirmed Davis' desire to proceed separately in this Court.

## ARGUMENT

This Court has broad authority to transfer this case to the District of Connecticut and should do so to promote judicial efficiency as the two putative class actions pending in Connecticut also involve the question of whether Defendants' alleged "clawback" arrangement was improper. Courts in the Ninth Circuit routinely transfer later filed actions under the first-to-file rule. *See e.g., Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02644-YGR, 2013 U.S. Dist. LEXIS 128440, at *12-13 (N.D. Cal. Sept. 9, 2013) (transferring putative class action from Northern District of California to the District of Colorado); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740-EDL, 2012 U.S. Dist. LEXIS 188186, at *2 (N.D. Cal. Sept. 12, 2012) (transferring case from Northern District of California to Eastern District of New York); *Hilton v. Apple, Inc.*, No. C-13-2167-EMC, 2013 U.S. Dist. LEXIS 142354, at *23-26 (N.D. Cal. Oct. 1, 2013) (transferring from the Northern District of California to the Central District of California).

In the alternative, transfer is also appropriate under the federal transfer statute, 28 U.S.C. § 1404(a). *See In re Genesisintermedia, Inc. Secs. Litig.*, No. cv 01-02024-SVW-(Mcx), 2003 US Dist. LEXIS 27565, at *4 (C.D. Cal. June 13, 2003); *Siddiqi v. Gerber Prods.*, No. CV 12-1188-PA (RZx), 2012 U.S. Dist. LEXIS 190628, *11 (C.D. Cal. March 26, 2012).

### I. THIS COURT SHOULD TRANSFER THIS ACTION UNDER THE FIRST-TO-FILE RULE

Where cases involve essentially the same parties and substantially overlapping issues, as is the case here, a court has broad discretion to dismiss, stay, or transfer later

filed actions in order to conserve judicial resources, promote efficiency, and "avoid the embarrassment of conflicting judgments." *Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. Cal. 1979); *Koehler*, 2013 U.S. Dist. LEXIS 128440, at *5-6 (citing *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). "[T]he 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology*, 611 F.2d at 750. When applying the first-to-file rule, courts consider three factors: (1) the filing dates of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Schwartz*, 2012 U.S. Dist. LEXIS 188186, at *7 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-27 (9th Cir. 1991)). All of these considerations support transfer here.

**A. The First-Filed Case Was Filed in the District of Connecticut**

There is no dispute about the chronology of the relevant actions. The first-filed case, *Negron*, was filed almost eight weeks before *Davis*, and a second case, *Perry*, was filed in the District of Connecticut nearly three weeks before this action.

**B. The Parties Are Substantially Similar**

*Davis* involves substantially similar parties as the District of Connecticut actions. Further, the exact identity of the parties need only be substantially similar, and the "rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Cadenasso v. Metro. Life Ins. Co.*, No. 13-cv-05491-JST, 2014 U.S. Dist. LEXIS 52750, at *34 (N.D. Cal. April 5, 2014) (holding transfer under first-to-file rule appropriate even where classes did not overlap). Here, both Defendants named in this action are also named in the two District of Connecticut cases that preceded this action as well as the fourth case filed on the same day. OptumRx is named in the *Perry* action, and Cigna Corporation and Cigna Health and Life Insurance Company are named in both the *Negron* and *Perry* actions. While OptumRx is not a named defendant in the *Negron* action, the complaint alleges that OptumRx, the pharmacy benefit manager for Cigna, was an agent of Cigna, defendants or their agent engaged in the allegedly improper "clawback" arrangement,

and OptumRx was part of the improper "enterprise" under RICO. (Negron Compl. ¶¶ 17, 139-54.)[5]

With regard to the plaintiffs, in the class action context, courts examine whether the classes in the different complaints are substantially similar. *Apple*, 2013 U.S. Dist. LEXIS 142354, at *24-25 (finding classes substantially similar where first suit had classes of iphone 4 owners and iphone 4s owners and second suit had class of iphone 4 owners); *Koehler*, 2013 U.S. Dist. LEXIS 128440, at *12-13 (ordering transfer under first-to-file rule where proposed class in later action encompassed purchasers of all Goldfish crackers and proposed class in first suit encompassed only purchasers of "Cheddar" Goldfish crackers). Here, the plaintiffs in each case purport to seek relief on behalf of a putative nationwide class of members of plans administered by Cigna that, if certified, would include Davis, as well as thousands of other people who would be class members in the other cases as well. *See*, *supra* at 4-6 (setting forth proposed class definitions in each of the complaints).

Thus, the parties in the District of Connecticut actions and this action are substantially similar.

**C. Plaintiff's Claims Are Substantially Similar**

The claims raised in each of the three pending putative class actions are substantially similar. Claims need only be substantially similar, not identical, for the first-to-file rule to apply. *Schwartz*, 2012 U.S. Dist. LEXIS 188186, at *8. Davis's Complaint makes the same factual allegations and claims against Defendants as the two District of Connecticut complaints filed before hers. Like the Connecticut complaints, Davis alleges that Cigna and OptumRx implemented an improper "clawback" arrangement that purportedly required pharmacies to increase the prices charged to the class for prescription drugs over the pharmacies' reimbursement rates they set, and then "clawing back" the difference for themselves. (*Compare* Davis Compl. ¶¶ 2-3, 15-22

[5] The *Negron* action alleges that the "clawback" is at the direction of Cigna and monies "clawed back" are paid to Cigna. (Negron Compl. ¶ 44.)

*with* Negron Compl. ¶¶ 3, 36-39 *and* Perry Compl. ¶¶ 5-10, 35-49.)

As noted above, each of the ERISA and RICO claims raised in Davis's complaint have been brought by plaintiffs in the pending District of Connecticut Actions on behalf of overlapping putative classes. *See, supra* at 6-7. Davis seeks the same relief as the putative class actions in Connecticut and as an insured of a plan administered by Cigna (Compl. ¶ 4), would be a member of the putative class actions pending in Connecticut. The fact that some of the District of Connecticut actions include additional claims does not change the first-to-file analysis or defeat transfer. *Schwartz,* 2012 U.S. Dist. LEXIS 188186, at *8 ("the rule can apply even if the later filed action brings additional claims"). Nor are there any compelling circumstances or exceptions that would allow Davis to evade the first-to-file rule here. *See Apple*, 2013 U.S. Dist. LEXIS 142354 at *31-32. Accordingly, transfer to the District of Connecticut under the first-to-file rule is appropriate.

## II. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION UNDER 28 U.S.C. § 1404(a)

Transferring this case to the District of Connecticut is also proper under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to 'prevent the waste of time, energy and money'" and "'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Elects. for Imaging, Inc. v. Tesseron Ltd.*, No. C 07-05534-CRB, 2008 WL 276567, at *1 (N.D. Cal. Jan. 29, 2008) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)). "District courts have broad discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration," and their analysis of the relevant factors should be "flexible and individualized." *Galitski v. Samsung Telcoms. Am., LLC*, No. 8:CV-12-00903-CJC(JPRx), 2012 U.S. Dist. LEXIS 191733, at *7 (C.D. Cal. Nov. 21, 2012) (quotation omitted).

To transfer under Section 1404(a), the Court must make two findings: (1) the

transferee district court is one where the action might have been brought, and (2) the conveniences of the parties and witnesses and the interest of justice favor transfer. 28 U.S.C. § 1404(a). There is no question this case could have been brought in the District of Connecticut, and two other nearly identical complaints have already been brought there and have been consolidated for pre-trial purposes. OptumRx does not dispute that it is subject to personal jurisdiction in Connecticut or that venue is proper in Connecticut.

With respect to the second prong, the Court should consider at least three factors in deciding whether to transfer a case to another court: (1) the convenience of parties; (2) the convenience of the witnesses; and (3) the interest of justice. *Schwartz*, 2012 LEXIS 188186, at *11. But whether transfer will be in the interest of justice "may be determinative." *In re Genesisintermedia,* 2003 US Dist. LEXIS 27565, at *13. *See also Bennett v. Bed Bath & Beyond*, No. C 11-02220, 2011 U.S. Dist. LEXIS 79973, at *6 (N.D. Cal. July 22, 2011) ("the interest in judicial economy is enough to support transfer regardless of the other factors").

**A. The Interest of Justice Weighs Strongly in Favor of Transfer**

Transferring this case to the District of Connecticut would conserve judicial resources in the interest of justice. In considering the interests of justice, the Court may consider a variety of factors, *see Schwartz*, 2012 LEXIS 188186, at *11 (listing potentially relevant factors), but the Court "should consider [] the existence of related litigation pending in another district[,] and whether consolidation is feasible in the transferee district." *In re Genesisintermedia*, 2003 US Dist. LEXIS 27565, at *13-14 (internal quotation omitted) (granting transfer from Central District of California to District of Minnesota where two cases were already pending). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). *See also LFG Nat'l Capital, LLC v. Gary, Williams, Finney, Lewis, Davis & Sperando, P.L.*, No. CV 11-9988 PSG (PJWx), 2012 U.S. Dist. LEXIS 188115, at

*12-13 (C.D. Cal. Mar. 9, 2012) ("It would be far from economical to litigate precisely the same issues in parallel in two federal district courts located on opposite sides of the United States."); *Elects. for Imaging*, 2008 WL 276567, at *1 (transferring action based on interest of justice and noting that "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result") (citation and quotations omitted).

Here, there are two substantially similar and overlapping class actions in the District of Connecticut that have already been consolidated before that court. (*See* Order Granting Pls.'s Mot. Consolidate and Appt. Interim Class Counsel, Case No. 3:16-cv-01702-WWE, Doc. 19, Order (D. Conn. Dec. 8, 2016) Grant Decl., Ex. 3.) In light of Davis' overlapping claims and allegations, absent transfer, there will be overlapping arguments, briefs, and rulings at every stage in the litigation. Litigating in two federal courts could potentially lead to inconsistent rulings. The inconvenience to Defendants of having to litigate the same issues in multiple courts and the interests of judicial economy weigh in favor of transfer. *See Enom v. Philbrick*, No. C08-1288RSL, 2008 WL 4933976, at *3 (W.D. Wash. Nov. 17, 2008) (finding transfer appropriate under the first-to-file rule and Section 1404 where "simultaneous adjudication of both cases would waste judicial resources, multiple the proceedings, undermine judicial efficiency, and risk conflicting determinations of the parties' legal rights").

While courts generally give deference to a plaintiff's choice of forum, here Plaintiff's choice deserves no weight because she is not a California resident and she brings a nationwide class action under federal law. *See Siddiqi v. Gerber Prods.*, 2012 U.S. Dist. LEXIS 190628, at *9-10 (transferring case and giving "no deference" to plaintiff's choice of forum where plaintiff was non-resident, representing nationwide class). Davis raises no California state law claims, thus the District of Connecticut is equally familiar with and capable of applying the applicable federal law. Moreover, consolidation is feasible, and indeed anticipated, because Davis's claims are substantially

related to and overlapping with those claims made in the actions that are already pending and that are already consolidated in the District of Connecticut. The District of Connecticut's order states that any subsequently cases filed in or transferred to the District of Connecticut be consolidated with *Negron* and *Perry*. "The necessity of an orderly administration of the courts does at times require the consolidation of [class] actions . . . where the same issues are presented[,] where the plaintiffs are apparently members of the class [and where they are] proceeding against the same . . . defendants. There is no right to maintain separate actions in these circumstances." *Rivarde v. Missouri*, 930 F.2d 641, 642-43 (8th Cir. 1991) (quoting *Miller v. Board of Ed.*, 667 F.2d 946, 949 (10th Cir. 1982)).

**B. Convenience of the Parties and Witnesses Support Transfer**

The interest of justice alone warrants transfer here, but the other factors also support transfer. While OptumRx is based in California, it is the only party with direct ties to California. OptumRx is one of several affiliated companies offering health services under the Optum umbrella. (Cross Decl. ¶ 6.) Optum is one of two operating divisions of UnitedHealth Group Incorporated. (*Id.*) Optum's principal place of business is in Minnesota, although it maintains offices and facilities across the country. (*Id.*) The ultimate parent company of OptumRx, UnitedHealth Group, is also headquartered in Minnesota. (*Id.* at ¶ 5.)

OptumRx only began providing pharmacy benefit management services for Cigna after it acquired Catamaran in July 2015, which had entered into a contract with Cigna two years earlier. (Cross Decl. ¶ 8.) Catamaran was headquartered in Illinois. (*Id.* at ¶ 7.) Since the acquisition of Catamaran, OptumRx has moved some Catamaran employees and operations to Minnesota and California, while some have remained in Illinois. (*Id.* at ¶ 8.) The account manager for OptumRx's relationship with Cigna is located in New Jersey. (*Id.* at ¶ 9.) Thus, potential witnesses from OptumRx are located in Illinois, Minnesota and California.

Discovery for the *Negron* and *Perry* actions will largely take place in Connecticut,

where Cigna is headquartered, or will be scattered across the country. Defendants are already litigating in Connecticut, and the same witnesses and evidence would be relevant to both cases. Accordingly, the convenience of the parties and the witnesses support transfer. *See Heartland Payment Sys. Inc. v. Verifone Israel Ltd.*, No. C 10-0654-MHP, 2010 WL 1662478, at *5 (N.D. Cal. April 22, 2010) (transferring action under Section 1404 when issues were not identical but "intertwined," because "appearing in a single district [was] more convenient than appearing in two different district on opposite ends of the country") (citations omitted).

Furthermore, Connecticut is no less convenient than California for Plaintiff (who is a resident of neither) or the class. *See Jovel v. I-Health*, No. CV 12-005526-DDP (JCGx), 2012 U.S. Dist. LEXIS 161281, at *14 (C.D. Cal. Nov. 8, 2012) ("a nationwide class action is by its nature an action that covers the nation, so it is to be expected that some class members would be required to travel no matter the ultimate forum").

In the aggregate, transfer to the District of Connecticut is appropriate.

## **CONCLUSION**

This Court should transfer the case to the District of Connecticut for coordination and consolidation with the eight cases pending there under the first-to-file rule or, alternatively, Section 1404(a). Transfer of this action would further the interests of justice and comity and ease the burden on the parties and witnesses.

Dated: December 23, 2016 Respectfully submitted,

By: *Bryan M. McGarry*
Michelle S. Grant, Esq.
Bryan M. McGarry, Esq.
**DORSEY & WHITNEY LLP**

Attorneys for Defendant
OPTUMRX, INC.